IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE

| | |
|---|---|
| JERRY THOMAS, | ) |
|     Plaintiff, | ) Docket No.: 3:20-cv-00522 |
| v. | ) District Judge Crytzer |
| | ) Magistrate Judge Guyton |
| LEADPOINT, INC., | ) Jury Demand |
|     Defendant. | ) |

## LEADPOINT, INC'S ANSWER TO COMPLAINT AND COUNTER COMPLAINT

Defendant and Counterclaimant, LeadPoint, Inc. ("LeadPoint"), respectfully submits this Answer to Jerry Thomas' ("Plaintiff") Complaint. LeadPoint denies that it has violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 or its regulations ("TCPA").

### INTRODUCTION

1. LeadPoint denies that it violated the TCPA and the validity of Plaintiff's Complaint.

### JURISDICTION AND VENUE

2. The allegations in Paragraph 2 are legal conclusions to which no response is required. To the extent a response is required, LeadPoint admits that Plaintiff alleges a claim under the TCPA, which is a federal law. To the extent that Plaintiff suggests he has Article III standing to bring his claim, LeadPoint denies that Plaintiff has Article III standing.

3. The allegations contained in Paragraph 3 are legal conclusions to which no response is required. To the extent a response is required, LeadPoint denies that it violated the TCPA and denies that it committed any wrongful conduct giving rise to this or any other action.

1

4. The allegations contained in Paragraph 4 are legal conclusions to which no response is required. To the extent a response is required, LeadPoint denies that it violated the TCPA and denies that it committed any wrongful conduct giving rise to this or any other action.

## PARTIES

5. LeadPoint admits that Plaintiff is a natural person residing in Knoxville, Tennessee. LeadPoint lacks the knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in Paragraph 5, and on that basis, denies them.

6. The allegations contained in Paragraph 6 are legal conclusions to which no response is required. To the extent a response is required, LeadPoint admits that Plaintiff is an individual and denies that it violated the TCPA.

7. LeadPoint admits it is a corporation and denies the remaining allegations in Paragraph 7.

8. The allegations contained in Paragraph 8 are legal conclusions to which no response is required. To the extent a response is required, LeadPoint admits it is a corporation and denies that it violated the TCPA.

9. LeadPoint admits that it has acted through employees, officers, and directors previously. LeadPoint denies that it acted through anyone to violate the TCPA and denies the remaining allegations in Paragraph 9.

## FACTUAL ALLEGATIONS

10. LeadPoint lacks the knowledge or information sufficient to form a belief about the truth or falsity of allegations in Paragraph 10, and on that basis, denies them.

11. LeadPoint lacks the knowledge or information sufficient to form a belief about the truth or falsity of allegations in Paragraph 11, and on that basis, denies them.

12. LeadPoint lacks the knowledge or information sufficient to form a belief about the truth or falsity of allegations in Paragraph 12, and on that basis, denies them.

13. LeadPoint denies the allegations in Paragraph 13 of the Complaint.

14. LeadPoint denies that Plaintiff did not seek information relating to loans. LeadPoint lacks the knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in Paragraph 14, and on that basis, denies them.

15. The allegations contained in Paragraph 15 are legal conclusions to which no response is required. To the extent a response is required, LeadPoint denies that it violated the TCPA.

16. LeadPoint submits that the allegations at Paragraph 16 of the Complaint are improper to the extent they rely on conduct or statements inadmissible under Federal Rule of Evidence 408. LeadPoint denies the allegations in Paragraph 16 of the Complaint.

17. LeadPoint admits that it provided Plaintiff with proof of his consent to receive text messages. LeadPoint denies the remaining allegations.

18. LeadPoint admits that Plaintiff takes the positions he describes in Paragraph 18 of the Complaint and denies the remaining allegations (including any suggestion that LeadPoint's proof of consent is unreliable and that Plaintiff provided "proof" of unreliability).

19. LeadPoint submits that the statement alleged at Paragraph 19 is improper and inadmissible under Federal Rule of Evidence 408. LeadPoint admits that the quoted text was written and denies the remaining allegations in Paragraph 19 of the Complaint because they partially quote one line of text and take that quotation out of context.

20. LeadPoint admits that Plaintiff provided a document that appears to contain a screenshot of messages. LeadPoint denies that it had anything to do with several text messages Plaintiff claims to have received from LeadPoint. LeadPoint lacks the knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in Paragraph 20, and on that basis, denies them.

21. LeadPoint lacks the knowledge or information sufficient to form a belief about the truth or falsity of allegations in Paragraph 21, and on that basis, denies them.

22. LeadPoint submits that the statement alleged at Paragraph 22 is improper and

inadmissible under Federal Rule of Evidence 408. LeadPoint admits that the quoted text was written and denies the remaining allegations in Paragraph 22 of the Complaint because they partially quote text and take it out of context.

23. LeadPoint denies the allegations in Paragraph 23 of the Complaint.

24. LeadPoint denies the allegations in Paragraph 24 of the Complaint.

25. LeadPoint denies the allegations in Paragraph 25 of the Complaint.

## COUNT I

26. LeadPoint incorporates by reference its answers to paragraphs 1 through 25 as if fully set forth herein.

27. Paragraph 27 does not assert factual allegations, so no response is required. To the extent a response is required, LeadPoint denies that it violated the TCPA and denies that Paragraph 27 correctly paraphrases the statute.

28. Defendant denies the allegations in Paragraph "23" of the Complaint.

29. The allegations contained in Paragraph "23" are legal conclusions to which no response is required. To the extent a response is required, LeadPoint denies that it violated the TCPA.

30. Defendant denies the allegations in Paragraph "24" of the Complaint.

31. Defendant denies the allegations in Paragraph "25" of the Complaint.

32. Defendant denies the allegations in Paragraph "26" of the Complaint.

33. Defendant denies the allegations in Paragraph "27" of the Complaint.

## AS TO PLAINTIFF'S PRAYER FOR RELIEF

LeadPoint denies that Plaintiff is entitled to any relief whatsoever, including, but not limited to, any monetary damages (including actual damages, statutory damages, or trebled statutory damages), injunctive relief, or any other relief.

## AFFIRMATIVE DEFENSES

LeadPoint, in the alternative, and without prejudice to the denials and other statements in

4

Case 3:20-cv-00522-KAC-HBG   Document 12   Filed 02/26/21   Page 4 of 16   PageID #: 32

its Answer, states the following Affirmative Defenses. By setting forth these affirmative defenses, LeadPoint does not assume the burden of proof as to any fact issue or other element of any cause of action on which Plaintiff bears the burden of proof. Moreover, LeadPoint reserves the right to rely upon additional defenses to claims asserted by Plaintiff to the extent that such defenses are supported by information developed through discovery or evidence at trial.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Lack of Standing and Lack of Subject Matter Jurisdiction)

The Complaint and each purported claim contained therein are barred to the extent that Plaintiff lacks standing, including Article III standing, because – as discussed in LeadPoint's counterclaim – LeadPoint is informed and believes that Plaintiff requested the text messages allegedly at issue and caused his own alleged injuries.

## THIRD AFFIRMATIVE DEFENSE

### (Prior Express Consent)

The Complaint and each purported claim contained therein are barred because, as discussed in LeadPoint's counterclaim, LeadPoint is informed and believes that Plaintiff provided consent by visiting websites, submitting information, and requesting the alleged messages.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, Laches, Unclean Hands, and Ratification)

The claims asserted in the Complaint are barred, in whole or in part, by the doctrines of

5

waiver, estoppel, laches, unclean hands, and ratification. As discussed in LeadPoint's counterclaim, LeadPoint is informed and believes that Plaintiff consented and requested the text messages he now complains of.

**FIFTH AFFIRMATIVE DEFENSE**

**(Plaintiff's Own Actions or Inaction)**

Plaintiff's damages, if any, have been caused by his own action or inaction; as discussed in LeadPoint's counterclaim, LeadPoint is informed that Plaintiff provided prior express consent to receive text messages by visiting websites, submitting information, and requesting the messages.

**SIXTH AFFIRMATIVE DEFENSE**

**(Third Parties/No Vicarious or Agency Liability)**

Plaintiff cannot recover for acts alleged in the Complaint that were performed, if at all, by individuals and entities for whom LeadPoint is not vicariously liable and any such alleged conduct was outside the course and scope of any relationship with LeadPoint.

**SEVENTH AFFIRMATIVE DEFENSE**

**(No ATDS)**

The definition of an ATDS is currently under review by the United States Supreme Court in *Facebook v. Duguid*, 19-511. Resolution of this case in Facebook's favor will dispose of Plaintiff's claim. LeadPoint reserves its rights to rely on the outcome of *Facebook* to defend this case.

## EIGHTH AFFIRMATIVE DEFENSE

## (TCPA Unconstitutional post-*Barr v. AAPC*)

Plaintiff's claim fails because alleged violations of the TCPA occurring while the government-debt exception was in place, and before the U.S. Supreme Court's decision in *Barr v. AAPC*, 140 S. Ct. 2335 (2020), cannot be enforced as the law was unconstitutional at the time. *Lindenbaum v. Realgy LLC*, No. 1:19-cv-2862, 2020 U.S. Dist. LEXIS 201572 (N.D. Ohio Oct. 29, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc..*, No. 5:20-cv-00038-JSM-PRL, 2020 U.S. Dist. LEXIS 236577 (M.D. Fl. Dec. 11, 2020).

## NINTH AFFIRMATIVE DEFENSE

## (Fraud)

As discussed below, in LeadPoint's counterclaim, Plaintiff committed fraud; LeadPoint is informed and believes that Plaintiff requested the text messages he now complains of by visiting two websites, submitting his information, and agreeing to receive the alleged messages.

## TENTH AFFIRMATIVE DEFENSE

## (Reservation of Rights)

LeadPoint reserves the right to supplement its Answer and to assert any other defenses available to it under applicable law.

## **COUNTERCLAIM**

LeadPoint hereby asserts the following counterclaims against Plaintiff and Counterclaim Defendant Jerry Thomas. LeadPoint sets forth as follows:

## PARTIES

1. LeadPoint is a Delaware corporation.

2. Plaintiff/Counterclaim Defendant Jerry Thomas ("Mr. Thomas") is an individual, and a resident of Knoxville, Tennessee. On information and belief, Mr. Thomas is a military

veteran.

## JURISDICTION

3.       Defendant is a defendant in the present Action.  If the Court has subject matter over the Action, the Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367(a) as it arises from the same case or controversy.

## FACTUAL ALLEGATIONS

4.       LeadPoint is informed and believes that Mr. Thomas provided consent to receive text messages from LeadPoint on at least two separate occasions: on September 11, 2017, on downpaymentsurvey.com, and on November 7, 2018, on veteranlending.com.

5.       Downpaymentsurvey.com and veteranlending.com are websites on which visitors can request mortgage-related information by way of calls and text messages.

6.       LeadPoint is informed that Mr. Thomas is a military veteran.  Mr. Thomas' public LinkedIn profile, for example, describes him as having "served in the military" and includes several references to the U.S. Armed Forces and veteran-affiliated groups:[1]

Groups

- Disabled American Veterans & Supporters
- US Military Veterans Network
- Veterans Hired
- The Value Of a Veteran
- US Veterans
- Military Veteran to Civilian Career Transitions

View Jerry's full profile

---

[1] The acco

7. LeadPoint is informed and believes that on September 11, 2017, Mr. Thomas visited downpaymentsurvey.com, submitted information, and requested mortgage-related information through calls and text messages. LeadPoint's business records reflect a visit to that website on September 11, 2017 linked to an IP address associated with Comcast Cable that traces back to Knoxville, Tennessee. During that session, the name Jerry Thomas was submitted along with an email address starting with "jsmmthomas," and a telephone number ending in 4451.[2] Prior to transmission of the information requesting mortgage-related information, the website presented TCPA-compliant disclosure language confirming that the submitter agreed to receive calls and text messages from LeadPoint. The language said, among other things: "By clicking the button above, you acknowledge, consent and agree to the following: . . . You are providing express written consent . . . for SecureRights, parties calling on behalf of Secure Rights . . . to contact you (including through automated means; e.g. autodialing, text and pre-recorded messaging) about financial services or other credit related offers via telephone, mobile device (including SMS and MMS) . . . ."[3]

8. In addition to the above, Mr. Thomas' Google account history shows that between

---

[2] On October 19, 2020, Mr. Thomas wrote to LeadPoint, claiming to have received text messages at the same telephone number that was submitted during the session, and wrote from the same email address submitted during the session. As he does in the Complaint, Mr. Thomas claimed the messages were made without his consent.

Mr. Thomas also operates a public Twitter account using the handle "@jsmmthomas." As of February 22, 2021, that Twitter account references "Jerry Thomas" and indicates that it is based out of "Knoxville, TN." *See* https://twitter.com/jsmmthomas.

On his public Facebook account, Mr. Thomas included a post dated January 24, 2020 discussing a "kit" "for making money from telemarketers." The post adds, "I've sent out four certified letters already in the last couple of weeks, still waiting to hear back from any though. I'll keep you posted!" LeadPoint is aware of an additional TCPA case filed by Mr. Thomas, *Jerry Thomas v. Healthcare Revenue Recovery Group, LLC*, No. 3:20-cv-00358-DCLC-HBG (E.D. Tenn.).

[3] SecureRights is a trade name of LeadPoint.

September 8 and 12, 2017, Mr. Thomas was searching for addresses, and directions to addresses, of real estate in Tennessee that was on the market at the time of his searches. For example, Mr. Thomas searched for 8921 Natures Pond Way, Knoxville, TN, which Zillow.com shows as for sale between August 24, 2017 and October 30, 2017:



As a second example, Mr. Thomas searched for 5321 Castle Pines Ln, Knoxville, TN 37920, which Zillow.com shows as for sale in September 2017 through October 22, 2017:

The same Google account history shows Mr. Thomas conducted four other similar searches for property that was also on the market at the time of the searches.

9. Mr. Thomas' Google account activity between November 6 and 8, 2018, reflects use of Xfinity digital services. Xfinity services are provided by Comcast Cable Communications, LLC and its subsidiaries and affiliates.[4] The same Google account history includes references to use of "com.samsung.android.messaging" and "com.sec.android.app.camera."

10. LeadPoint is informed that on November 7, 2018, Mr. Thomas visited veteranlending.com, submitted information, and requested mortgage-related information through calls and text messages. LeadPoint's business records reflect a visit to that website on November 7, 2018 linked to an IP address associated with Comcast Cable that traces back to Knoxville, Tennessee. During that session, the name Jerry Thomas was submitted along with the same email address described above starting with "jsmmthomas," and the same telephone number described above that ends in 4451. LeadPoint's business records further reflect that a device with an



---

[4] https://my.xfinity.com/terms/web/

11

Case 3:20-cv-00522-KAC-HBG   Document 12   Filed 02/26/21   Page 11 of 16   PageID #: 39

Android operating system was used in connection with this session. Prior to transmission of the information requesting mortgage-related information, the website presented TCPA-compliant disclosure language confirming that the submitter agreed to receive calls and text messages from LeadPoint. The language said, among other things: "By clicking the button above, you acknowledge, consent and agree to the following: . . . You are providing express written consent . . . for SecureRights, parties calling on behalf of Secure Rights . . . to contact you (including through automated means; e.g. autodialing, text and pre-recorded messaging) about financial services or other credit related offers via telephone, mobile device (including SMS and MMS) . . . ."

## COUNT I
### (Fraud)

11. LeadPoint incorporates paragraphs 1 through 10.

12. LeadPoint is informed that Mr. Thomas consented to receive text messages from LeadPoint on at least September 11, 2017 and November 7, 2018, by visiting, submitting information (including a phone number he now claims is his), and agreeing to TCPA-compliant consent language on downpaymentsurvey.com and veteranlending.com.

13. As detailed above, the name Jerry Thomas was submitted during each session on September 11, 2017 (at downpaymentsurvey.com) and November 7, 2018 (on veteranlending.com). The telephone number Mr. Thomas claims is his was submitted during each session. An email address starting with "jsmmthomas," which Mr. Thomas later used to communicate with LeadPoint, was submitted during each session. LeadPoint's business records show an IP address associated with Comcast Cable that tracks back to Knoxville, Tennessee (where Mr. Thomas now alleges residing) linked to each session. LeadPoint's business records, moreover, reflect the use of a device with an Android operating system in connection with the November 7, 2018 submission on veteranlending.com.

14. Mr. Thomas' Google account history between September 8 and 12, 2017 reflects searches for six properties that were on the market at the time of those searches in Tennessee (and at the time of the session on downpaymensurvey.com). Mr. Thomas states that he is a

12

veteran in social media (LeadPoint notes that one of the sessions occurred on a website called "veteranlending"). Mr. Thomas' Google account history also includes references to the use of "com.samsung.android.messaging" and "com.sec.android.app.camera" in early November 2018 (again, LeadPoint's records indicate use of an Android operating system in connection with the November 7, 2018 session). Mr. Thomas' Google account history includes several references to use of Xfinity services (which are provided by Comcast).

15. LeadPoint is informed and believes that Mr. Thomas agreed to the disclosures on the websites on September 11, 2017 and November 7, 2018, and intentionally misrepresented agreeing to receive the text messages at issue. In this suit (and in October 2020) Mr. Thomas claims he never agreed to receive the alleged text messages, which LeadPoint is informed and believes are further intentional misrepresentations of fact. LeadPoint is informed and believes that Mr. Thomas made each of these misrepresentations with knowledge of their falsity, when they were made, and with intent to defraud.

16. Each of Mr. Thomas' misrepresentations were material misrepresentations of an existing or past fact – initially, agreeing to receive text messages now allegedly at issue, and later claiming he had not agreed to receive the alleged text messages. The misrepresentations are material because he is now pursuing a lawsuit premised on never having provided LeadPoint with consent to receive text messages.

17. LeadPoint is further informed and believes that Mr. Thomas knowingly or recklessly misrepresented agreeing to receive the text messages at issue when he submitted information on the websites and requested information because, according to his allegations in this case, LeadPoint contacted Mr. Thomas without prior express consent. On information and belief, Mr. Thomas made knowing and reckless misrepresentations when he claimed that he received text messages without consent because he previously requested text messages when he visited and submitted information in the websites as described above. On information and belief, Mr. Thomas submitted information on the websites, and requested information, for the purpose of generating this lawsuit.

18. LeadPoint reasonably relied on Mr. Thomas' false material representations; as detailed above, there was no indication that any of the information was false (the submissions contained Mr. Thomas' name, an IP address that tracked back to Knoxville, Tennessee, an email address starting with "jsmmthomas" that Mr. Thomas later used to communicate with LeadPoint,

13

and a telephone number that Mr. Thomas now claims is his). There was no indication that information was false or that it was being falsely provided. When Mr. Thomas filed his suit, LeadPoint was forced to defend what it believes to be a meritless lawsuit.

19. LeadPoint has been injured as a result of this tortious conduct and has suffered damages as a result of disruption to its business and employee time used to investigate Mr. Thomas' false claims and to respond to Mr. Thomas and his counsel.

20. LeadPoint only learned of the tortious conduct in October 2020, once Mr. Thomas contacted LeadPoint about this lawsuit. LeadPoint could not have discovered Mr. Thomas' fraud prior to this; as described above, LeadPoint's records reflect that the initial September 11, 2017 visit to downpaymentsurvey.com was associated with an IP address in Knoxville, Tennessee (where Mr. Thomas alleges residing). The name Jerry Thomas was entered, together with an email address starting with "jsmmthomas" (Mr. Thomas' social media presence includes references to "jsmmthomas" and Mr. Thomas later communicated with LeadPoint from the same email address), and a telephone number ending in 4451 (which Mr. Thomas has claimed is his). LeadPoint acted reasonably and did not have information indicating that it was being defrauded.

21. Based on the facts that are alleged above, Mr. Thomas' October 2020 communication, and Mr. Thomas' filing of the Complaint in this case, LeadPoint is informed that Mr. Thomas acted intentionally and with reckless disregard to the rights of LeadPoint, and his conduct was egregious and wanton, thus LeadPoint is entitled to punitive damages.

## DEFENDANT'S PRAYER FOR RELIEF

WHEREFORE, LeadPoint respectfully requests that the Court enter judgment against Mr. Thomas and award LeadPoint the following relief:

1. Enter Judgement in LeadPoint's favor;
2. Dismiss Mr. Thomas' Complaint with prejudice;
3. Order that Mr. Thomas take nothing by the Complaint;
4. Award LeadPoint monetary damages, punitive damages, interest, and all costs; and
5. Provide such further relief as the Court deems appropriate, including LeadPoint's attorneys' fees in the event LeadPoint pursues them.

**SIGNATURES ON FOLLOWING PAGE**

Respectfully submitted

/s/ *Esteban Morales*
Joshua Briones (*admitted pro hac*)
jbriones@mintz.com
Esteban Morales *(admitted pro hac)*
emorales@mintz.com
MINTZ LEVING COHN FERRIS GLOVSKY
AND POPEO, P.C.
2029 Century Park East, Ste. 3100
Los Angeles, CA 90067
Tel: 310-226-7841
Fax: 310-586-3202

Mary Dohner Smith, TN BPR No. 021451
mdohner@constangy.com
**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**
401 Commerce Street, Ste. 1010
Nashville, TN 37219
Tel: 615.320.5200
Fax: 615.810.8060

*Counsel for LeadPoint, Inc.*

## CERTIFICATE OF SERVICE

      I certify that on February 26, 2021, a copy of the foregoing document **LEADPOINT, INC'S ANSWER TO COMPLAINT AND COUNTER COMPLAINT** was furnished to the below individuals via the Court's electronic service process and/or U.S. Mail or email.

Amy L. Bennecoff Ginsburg
Kimmel & Silverman, PA
30 E. Butler Ave.
Ambler, PA 19002
Email: aginsburg@creditlaw.com

*Counsel for Plaintiff*

                                          */s/ Esteban Morales*
                                          Esteban Morales